## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

Mary Francis B.,

*Plaintiff,*

vs.

Case No. 20-1236-EFM

KILOLO KRJAKAZI,[1] Acting Commissioner
of Social Security,

*Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Mary Francis B. seeks judicial review of a final decision by Defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"). Plaintiff alleges that the administrative law judge ("ALJ") erred in failing to consider the limitations from her migraine headaches when assessing her residual functional capacity ("RFC"). For the reasons set forth below, the Court orders that the Commissioner's final decision should be reversed and that judgment will be entered under the fourth sentence of 42 U.S.C. § 405(g) remanding the case for further proceedings consistent with this opinion.

---

[1] On July 9, 2021, Kilolo Kijakazi was named the Acting Commissioner of Social Security. She is automatically substituted as defendant in this case. *See* Fed. R. Civ. P. 25(d).

## I.    Factual and Procedural Background

Plaintiff was age 42 as of her alleged disability onset date of May 7, 2016.  Her alleged disability encompasses several physical impairments but the only one applicable to this appeal is migraines.  Plaintiff reported that she has experienced migraines her entire adult life, but in 2018, they began affecting her differently.  In the summer of 2018, she twice sought emergent treatment for her migraines, and her provider prescribed her migraine medication.

Plaintiff applied for disability insurance benefits and supplement security income under the Act in February 2018, several months before Plaintiff began seeking treatment for her migraines. After two administrative denials, Plaintiff requested a hearing before an ALJ, which was granted. The hearing was held in July 2019, and Plaintiff and a vocational expert testified.  Plaintiff testified that she experiences one migraine per week, and that her symptoms last for two days.  She further testified that her migraines are alleviated by staying in a dark room, getting a shot from the doctor, or taking medicine.  She stated that she does not take migraine medication because she has difficulty getting it due to insurance reasons.  She also noted that her migraines still occur when she takes medicine, just for a shorter amount of time.

In September 2019, the ALJ issued a decision applying the regulatory five-step sequential process for evaluating disability claims.  As relevant here, the ALJ determined that Plaintiff's migraine headaches constituted a medically determinable impairment but were not "severe" as defined in agency regulations.  Specifically, the ALJ found:

> Treatment records reveal that the claimant has a history of migraines.  At the hearing, she testified that she experiences one migraine per week, and that the symptoms last for up to two days.  Treatment notes disclose that the claimant indicates that she has experienced such headaches since she was 16 years of age. On the other hand, the claimant reported that she does not take generally take [sic] medication for migraines. . . . The claimant indicated, at the hearing, that she continues to not take migraine medication.  There is no record of inpatient

hospitalization due to migraines, and no evidence of disabling functional limitations.

The ALJ then determined that Plaintiff retained the following RFC:

> to perform light work . . . in that the claimant can lift and/or carry/push and/or pull 20 pounds occasionally, 10 pounds frequently. She can sit, with normal breaks, for a total of 6 hours per 8-hour workday, and stand and/or walk, with normal breaks, for a total of 6 hours per 8-hour workday. She can frequently climb ramps and stairs, and occasionally climb ladders, ropes, or scaffolds. She can frequently stoop, kneel, crouch, and crawl. She can tolerate occasional exposure to extreme heat and humidity but she must avoid pulmonary irritants such as fumes, dusts, gases, noxious odors, and poorly-ventilated areas. She can understand, remember, and apply instructions to perform simple and detailed tasks commensurate with jobs SVP 4 and below. She can make work decisions commensurate with those tasks. She can concentrate to work at a consistent pace for two-hour periods before and after customary breaks. She can tolerate occasional interactions with coworkers and the general public. She can adapt to occasional changes in a work environment within these limitations.

The ALJ relied on vocational expert testimony to find that Plaintiff was unable to perform her past relevant work, but she could perform work as an office mail clerk, marker, document preparer, and hand mounter. Therefore, the ALJ concluded that Plaintiff was not disabled under the Act.

Plaintiff requested review of the ALJ's decision from the Appeals Council. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Having exhausted her administrative remedies, Plaintiff now seeks review of the ALJ's decision from this Court.

## II.    Legal Standard

Judicial review of the Commissioner's decision is guided by the Act, which provides, in part, that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."[2]   The Court must therefore determine whether the

---

[2] 42 U.S.C. § 405(g).

Commissioner made factual findings that are supported by substantial evidence in the record and applied the correct legal standard to those factual findings.[3]  Substantial evidence "is more than a scintilla: . . . It means—and means only—'such evidence as a reasonable mind might accept as adequate to support a conclusion.' "[4]  The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[5]

"An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[6] This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[7]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[8]  The steps are

---

[3] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).

[4] *Biestek v. Berryhill*, --- U.S.---, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[5] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[6] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306–07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[7] *Barkley v. Astrue*, 2010 WL 3001753, at *2 (D. Kan. 2010) (citing *Barnhart v. Walton*, 535 U.S. 212, 217–22 (2002); 20 C.F.R. § 416.920 (2005)).

[8] *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004); *see also* 20 C.F.R. § 404.1520(a).

designed to be followed in order.[9]  If it is determined, at any step of the process, that the claimant is or is not disabled, further evaluation is unnecessary.[10]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments.[11]  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments."[12]

Upon determining the claimant's residual functional capacity, the Commissioner turns to steps four and five, which require the Commissioner to determine whether the claimant can either perform past relevant work or can generally perform other work that exists in the national economy, respectively.[13]  The claimant bears the burden in steps one through four to prove an impairment or combination thereof that prevents performance of past relevant work.[14]  The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged

---

[9] *Barkley*, 2010 WL 3001753, at *2.

[10] *Id.*

[11] *Lax*, 489 F.3d at 1084 (citations omitted).

[12] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)).

[13] *Id.* (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[14] *Lax*, 489 F.3d at 1084.

impairments, based on the claimant's RFC and other factors, the claimant could perform other work in the national economy.[15]

### III.    Analysis

Plaintiff claims that the ALJ failed to properly consider her migraines throughout his decision.  Plaintiff argues that contrary to the ALJ's decision, the record supports a finding that her migraines are "severe," as defined in the regulations.  Plaintiff, however, does not assign error to the ALJ's finding at step two.  Instead, she argues that the ALJ errored at step four in assessing her RFC.  Plaintiff claims that the only reference to migraines in the ALJ's decision after step two was the "boilerplate language" that Plaintiff's "medically determinable impairments could reasonably be expected to cause [Plaintiff's] alleged symptoms."  Plaintiff argues that the ALJ's failure to consider the limitations resulting from her migraines constitutes reversible error.

The Commissioner acknowledges that the ALJ was required to consider the limiting effects of Plaintiff's migraines at the RFC phase of the evaluation and admits that the ALJ did not specifically address migraines in the RFC assessment.  The Commissioner argues, however, that any error in this regard was harmless.  According to the Commissioner, the ALJ's step two analysis is illustrative of, and relevant to, his later RFC findings, and the ALJ's RFC assessment reasonably accounted for Plaintiff's pain and other symptoms.

At step two, the ALJ determined that Plaintiff's migraines are a medically determinable impairment but that they are not "severe" as defined in the regulations.  An impairment is severe if it significantly limits a claimant's ability to do basic work activities.[16]  In the Tenth Circuit, this

---

[15] *Id.* (citation omitted).

[16] 20 C.F.R. §§ 404.1522, 416.922.

only requires a "de minimis" showing.[17]   In other words, the claimant need only show that an impairment "would have more than a minimal effect on [her] ability to do basic work activities."[18]

Here, the Court agrees with Plaintiff that the record evidence supports a finding that Plaintiff's migraines are severe.  Plaintiff sought emergent care for the treatment of her migraines twice during the summer of 2018 and again saw her medical provider in December 2018 for migraine treatment.   Additionally, the ALJ appears to accept Plaintiff's allegations that she experiences one migraine per week and that the migraines can last up to two days.  And, although the ALJ did not note it in his decision, Plaintiff testified at the hearing that the only way to alleviate the migraines is to stay in a dark room, get a shot from a doctor, or take medicine, and the prescribed medicine is only effective in reducing the duration of the migraines not eliminating them.

Furthermore, the facts relied upon by the ALJ in determining that Plaintiff's migraines are not severe do not negate the effects of her migraines on her ability to work.  For example, the ALJ relied on Plaintiff's lack of inpatient hospital stays to discount the severity of her impairment.  But, the failure to receive in-patient hospital treatment cannot change the detrimental effects Plaintiff experiences when she has a migraine.[19]   Thus, the Court agrees with Plaintiff that she made a *de minimis* showing that her migraines are severe.

---

[17] *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997) (citation omitted).

[18] *Williams*, 844 F.2d at 751.

[19] *See Hennigh v. Colvin*, 2016 WL 1298074, at *4 (D. Kan. 2016) (disagreeing with the ALJ that the claimant's failure to seek ongoing neurological treatment, failure to use injection therapy, failure to seek emergency room treatment, continuing chiropractic care, and normal MRI and CT results negates the effects of the claimant's migraines).

As Plaintiff acknowledges in her brief, the ALJ's finding at step two does not automatically require reversal. The Tenth Circuit has held that "[o]nce the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for the purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal."[20] But, the non-severe impairment does not disappear from the ALJ's analysis.[21] In assessing a claimant's RFC, "the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.' "[22] Thus, the Court's analysis of the ALJ's RFC assessment, and not the ALJ's findings at step two, is determinative as to whether the ALJ committed reversible error in this case.

Here, it's not clear whether the ALJ considered the effects of Plaintiff's migraines in assessing the RFC, and remand is necessary to correct that error. The RFC assessment says nothing regarding Plaintiff's migraines or any limitations resulting from them. Indeed, as the Commissioner points out, at the RFC stage, the ALJ discussed Plaintiff's severe impairments— fibromyalgia, obesity, and asthma. He did not, however, discuss any of Plaintiff's non-severe impairments.

Furthermore, while the ALJ states that he considered "all symptoms" in his RFC assessment, there is no indication that this is the case. In listing Plaintiff's subjective allegations, the ALJ makes no mention of her allegations related to her migraines. He then uses boilerplate

---

[20] *Hill v. Astrue*, 289 F. App'x 289, 292 (10th Cir. 2008); *see also Oldham v. Astrue*, 509 F.3d 1254, 1256-57 (10th Cir. 2007) (holding that at step two, an ALJ need only make a finding that a claimant has severe impairments because when assessing the RFC the ALJ is required to determine the extent to which all of the claimant's impairments restrict the claimant's ability to work).

[21] *Hill*, 289 F. App'x at 292.

[22] *Id*. (quoting SSR 96-8P, 1996 WL 374184, at *5).

language to conclude that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in the decision."  This language says nothing regarding whether the ALJ considered RFC limitations resulting from Plaintiff's migraines.

Even if the Court considered the ALJ's step two analysis as part of the RFC assessment, the ALJ's decision is not supported by substantial evidence.  At step two, the ALJ discounted Plaintiff's subjective allegations on the basis that she did not initially report taking medication for migraines, she continues to not take medication, and she has not been hospitalized due to migraines.  The ALJ did not identify which of Plaintiff's allegations he deemed incredible and which, if any, he believed.  Furthermore, to the extent the ALJ relied on Plaintiff's noncompliance with prescribed medication to evaluate Plaintiff's credibility, the ALJ erred because he did not apply the *Frey* test.

In *Frey v. Bowen*,[23] the Tenth Circuit held that before the ALJ may rely on the claimant's failure take medication as part of his credibility determination, the ALJ must consider "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and if so (4) whether the refusal was without justifiable excuse."[24]  In *Qualls v. Apfel*,[25] the Tenth Circuit clarified that the ALJ did not have to

---

[23] 816 F.2d 508 (10th Cir. 1987).

[24] *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (quoting *Frey*, 816 F.2d at 517).

[25] 206 F.3d 1368 (10th Cir. 2000).

apply the *Frey* test when the treatment had not been prescribed, but where the ALJ was only considering the attempts the claimant made to relieve his pain in assessing credibility.[26]

The Commissioner argues that the *Frey* test is in applicable in this case because it does not apply in situations where the ALJ is assessing whether the claimant attempted to relieve her symptoms.  The Commissioner's argument, however, relies solely on the ALJ's finding that Plaintiff initially reported that she does not take medication.  It ignores the fact that Plaintiff's providers later prescribed migraine medication.  Thus, contrary to the Commissioner's argument, the ALJ was required to conduct the *Frey* test before discounting Plaintiff's subjective allegations based on Plaintiff's noncompliance with prescribed medication.  The ALJ's failure to do so is reversible error.[27]

As this Court explained in *Hennigh v. Colvin*,[28] an ALJ's decision "must reveal the ALJ considered the effects of all impairments when assessing [the] RFC."[29]  Here, the ALJ's analysis at step two suggests that he did not believe Plaintiff's subjective allegations regarding her migraines to be credible.  But, the ALJ "did not affirmatively make that finding, and he did not explain which of those allegations he credited and which he did not" after generally stating that her allegations were not entirely consistent in his RFC assessment.[30]  Even if the Court considered the ALJ's step two findings as part of his RFC assessment, these findings are in error because he

---

[26] *Id*. at 1372.

[27] *See K.S. v. Saul*, 2021 WL 2338250, at *6 (D. Kan. 2021) (holding that *Frey* must be applied when the ALJ denies benefit and is evaluating the credibility of a plaintiff's allegations with respect to medication noncompliance).

[28] 2016 WL 1298074.

[29] *Id.* at *6.

[30] *Id*.

did not apply the *Frey* test in discounting Plaintiff's subjective allegations based on her failure to take prescribed medication.  Furthermore, Plaintiff's allegations related to her migraines show that her symptoms more than minimally affected her ability to perform basic work activities, but the ALJ failed to include a discussion of those symptoms or assess resulting limitations.  Therefore, the Court must remand the case for the ALJ to appropriately assess Plaintiff's migraines.

**IT IS THEREFORE ORDERED** that the Commissioner's final decision shall be **REVERSED** and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) **REMANDING** the case for further proceedings consistent herewith.

**IT IS SO ORDERED**.

Dated this 18th day of November, 2021.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE